DECISION.
A jury trial commenced against defendant-appellant Joseph Jones in February 1998. At the conclusion of the state's case, Jones moved for a judgment of acquittal on the ten charges against him. The trial court partially granted Jones's motion, ruling that there was insufficient evidence to sustain a conviction for aggravated robbery on count four, for robbery on count five, and for felonious assault against David Henderson, Leonard Peak, and Jeremy Hargrow on counts six, eight, and nine. At the end of the trial, Jones again moved for an acquittal on the five remaining counts, but the motion was overruled. The jury then returned a verdict acquitting Jones of aggravated burglary on count one, aggravated robbery on count two, and robbery on count three, but finding him guilty of felonious assault against Linda Miller on count seven, with a gun specification, and felonious assault against Davasia Henderson on count ten, with a gun specification.
After the jury verdicts were returned, Jones filed a motion to enter a judgment of acquittal on the two guilty verdicts or, in the alternative, to grant him a new trial on counts seven and ten. Following a hearing, the motion was denied and Jones was sentenced. Jones now appeals his convictions, presenting six assignments of error, none of which is well taken.
In his first assignment of error, Jones contends that he was denied his constitutional right to a public trial. The right to a public trial is an important fundamental guarantee under the United States and Ohio Constitutions; however, it is not an absolute right.[1] A trial judge may close the courtroom after considering various factors,[2]
such as whether there is an overriding interest that is likely to be prejudiced if the courtroom is closed and whether other reasonable alternatives are available.[3] Further, when a closure is issued, the order must be narrowly tailored to preserve the stated interest.[4]
Jones argues that his trial was "closed" because certain members of the public were unable to attend due to the limited seating provided in the courtroom. We, however, do not agree that limited seating in a courtroom due to capacity limitations constitutes a "closure" of the courtroom to the public. Although Jones had a constitutional right to a public trial, that right did not necessarily permit every interested member of the public to attend his trial.[5] To recognize such a right would be unreasonable, particularly when safety regulations and fire codes impose capacity limitations on places open to the public.
Here, the courtroom remained open to the public, and although two individuals were apparently unable to attend, others were present. As a result, we hold that Jones was not denied his constitutional right to a public trial, and we overrule his first assignment of error.
In his fourth assignment of error, Jones alleges that the trial court erred by refusing to permit the impeachment of David Henderson. Jones argues that the trial court should not have excluded evidence of Henderson's prior convictions under Evid.R. 403, because, pursuant to Evid.R. 609, impeachment evidence in the form of prior convictions is admissible.
The facts giving rise to this assignment are as follows. During pretrial discussion, a motion in limine was granted in order to prevent the introduction of Henderson's prior convictions through the testimony of other witnesses. The trial court stated that the only means to introduce Henderson's convictions would be in an attack on his credibility pursuant to Evid.R. 609 if he was called as a witness. Henderson was not called as a prosecution witness, but was instead called as a defense witness. Out of the jury's presence, there was extensive dialogue between the court, the prosecuting attorney, and defense counsel as to the admissibility of Henderson's prior convictions. And during that discussion, the trial court determined that the defense was seeking to introduce the evidence simply to show prior convictions. On appeal, Jones argues that Henderson's prior convictions were admissible under Evid.R. 609 to establish self-defense.
Evid.R. 609 permits the introduction of prior convictions, under certain circumstances, to impeach the witness's credibility.[6]
Evid.R. 609(A)(2) states the following:
Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice of confusion of the issues, or of misleading the jury.
Clearly, in determining whether a prior conviction should be admitted into evidence, the trial court is also required under Evid.R. 403 to consider whether the probative value of such information outweighs the danger of unfair prejudice.[7] The trial court, therefore, is accorded broad discretion in determining the admissibility of evidence under Evid.R. 609.[8]
Because there is no evidence in the record suggesting that Henderson's prior convictions were to be used to impeach his credibility, we conclude that the trial court did not err in determining that the probative value of the information did not outweigh its prejudicial effect. Further, even if we were to assume that the trial court erred, we conclude that there was no prejudice due to the substantial evidence of guilt otherwise adduced at trial. Accordingly, we overrule Jones's fourth assignment of error.
In his fifth assignment of error, Jones argues that the trial court erred in failing to issue a self-defense instruction to the jury. Jones, however, did not object or request a jury instruction on self-defense at his trial.
Absent plain error, the failure to object to an error before the jury retires constitutes a waiver.[9] Pursuant to Crim.R. 52(B), plain error is not present unless it is clear that, but for the error, the outcome below would have been otherwise.[10] The plain-error rule allows defects affecting substantial rights of the accused to be noticed where they were not brought to the trial court's attention. The plain-error doctrine, however, should be applied sparingly, and only when necessary to prevent a clear miscarriage of justice.[11]
In Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) the defendant did not violate any duty to retreat or avoid the danger.[12] If the defendant fails to prove any one of these elements by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense.[13]
Based on the record, we conclude that the outcome of the trial would not have been different even had a timely request for consideration of the defense been made, because Jones failed to demonstrate, at least, the first two elements of self-defense. The evidence presented here showed that Jones created the situation giving rise to the affray. As noted above, Jones created the situation by entering the home with a gun. Further, no evidence was presented that imminent bodily harm would have resulted if Jones had not used the gun. Under these facts, therefore, we cannot say that the outcome of Jones's proceeding would have been different with an instruction on self-defense. Jones's fifth assignment of error is overruled.
Jones's second assignment of error alleges that the trial court erred in denying his motion for a new trial pursuant to Crim.R. 33 and in denying his Crim.R. 29(C) motion for acquittal. With respect to the denial of a new trial, Jones argues that the trial court acted prejudicially in the following respects: (1) by its verbal and non-verbal responses to the jury's questions presented during deliberations, (2) by its general demeanor throughout the trial, and (3) by permitting the state to make prejudicial comments.
Under Crim.R. 33, a motion for a new trial is directed to the sound discretion of the trial court, and its ruling will not be disturbed upon appeal absent an abuse of discretion.[14] An abuse of discretion implies that the court's ruling was unreasonable, arbitrary, or unconscionable.[15] To amount to an abuse of discretion, the ruling must reflect more than an error of judgment.
First, Jones maintains that the trial court's verbal and nonverbal comments to the jury were prejudicial. Jones avers that he was prejudiced when the court, in response to the jury's questions, called the jury into the courtroom and told them the following: "[D]on't insert something that isn't there. * * * Don't change things, just take what I am giving you and apply it." Jones also objects to the "impression" left by the court when addressing the jury. Specifically, he maintains that the trial court's tone of voice and behavior inappropriately reflected anger.
Crim.R. 30(A) requires that "the court shall instruct the jury after the arguments are completed * * *." It is within the trial court's discretion whether to answer questions posed during the jury's deliberations and whether to clarify its instructions.[16]
Where the trial court refuses to repeat its instructions, the defendant must demonstrate that it was prejudiced by the trial court's refusal.[17]
Initially we note that facial expressions and tone of voice are difficult to review because the record does not demonstrate them.[18] And although a spectator did testify at the hearing on the motion for acquittal or new trial that the trial court appeared angry when instructing the jury, the trial court denied any anger. Without more evidence in the record relating to the court's behavior, we remain unpersuaded that the trial court's demeanor prejudiced Jones. Furthermore, we remain unpersuaded that the court's comments that the jury should reread the jury instructions were prejudicial.
Second, Jones complains that the trial court's general demeanor throughout the trial and at the hearing on the post-verdict motion for acquittal or new trial gave rise to prejudice because the trial court was biased. In State v. Wade,[19] the Ohio Supreme Court identified the standard to be applied in determining whether a court's comments reflect bias or impartiality:
 (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.[20]
However, the defendant must object to the comments in order to give the court an opportunity to correct the error by a curative instruction.[21] The failure to object waives all but plain error.[22]
Here, Jones cites generally to instances in the record where the trial court admonished defense counsel, but defense counsel did not object to these comments. After reviewing the court's comments at trial, we note that, for the most part, they were made outside the presence of the jury and cannot be characterized as prejudicial. Even if the jury had heard some of the comments, the trial court gave this warning:
 [I]f during the course of this trial, the Court said or did anything which you consider an indication on the Court views on the fact, I will instruct you at this time to disregard this if the Court by its action or did this it was completely unintentional.
Accordingly, we are unpersuaded that the comments made at trial were prejudicial, much less that they rose to the level of plain error. Further, we cannot conclude that the court's comments made at the post-verdict motion for acquittal or new trial constituted plain error.
Finally, Jones asserts that he was prejudiced when the prosecution made "inappropriate and prejudicial remarks about [Jones's] trial counsel before the court, thus, adding to the overall appearance of substantial bias and prejudice." We first note that Jones failed to object to any of these alleged instances of prosecutorial misconduct. Consequently, he waived any error but plain error.[23]
The record reflects that, while the prosecutor's comments were not necessarily collegial, they were made outside the presence of the jury and were not part of a pattern of repeated or egregious misconduct. We cannot, therefore, conclude that the prosecutor's comments were unfairly prejudicial or that they denied Jones a fair trial.[24]
Jones also argues in this assignment of error that the trial court erred by not granting his motion for judgment of acquittal. Under Crim.R. 29, a court should enter a judgment of acquittal if it determines that the evidence is insufficient as a matter of law to support a conviction. In reviewing the trial court's ruling, we consider whether, from the evidence when viewed in a light most favorable to the prosecution, a reasonable mind might fairly have found each element of the offense beyond a reasonable doubt.[25]
Viewing the evidence in the light most favorable to the state, we hold that the trial court did not err in denying Jones's Crim.R. 29 motion for acquittal. Jones was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(2), which states in pertinent part that "[n]o person shall knowingly * * * cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon * * *." The state presented evidence that Jones had a gun; that he used the gun against Linda Miller and Davasia Henderson; and that he shot the gun several times in their presence, hitting cars located nearby.
In sum, having concluded that Jones failed to demonstrate that he was entitled to a new trial pursuant Crim.R. 33, or that the prosecutor's evidence was insufficient, we hold that the trial court did not err in overruling the motion for a new trial and the motion for judgment of acquittal. Accordingly, Jones's second assignment of error is overruled.
Finally, in his third and sixth assignments of error, Jones asserts that he was denied his constitutional right to effective assistance of counsel during the course of his trial. The test for determining whether an accused was provided effective assistance of counsel involves a two-step process. First, it must be determined whether there was a substantial violation of an essential duty owed by defense counsel to the defendant.[26] If such a violation is found, there must be a determination as to whether the defense was prejudiced.[27]
In his third assignment of error, Jones alleges that his trial counsel's performance was ineffective because he failed to object to the trial court's behavior and because he failed to file a motion to recuse or disqualify the trial court. Jones points to the trial court's inappropriate use of facial gestures and expressions and its obvious bias against trial counsel as reasons why objections should have been made by trial counsel. As we discussed previously, we cannot effectively review such things as facial gestures because they are not demonstrated in the record. Moreover, we have concluded that the trial court's behavior did not constitute prejudicial bias or warrant a new trial; therefore, we fail to see how trial counsel's failure to object to some of the court's comments or to file a request for recusal resulted in prejudice to Jones. As a result, we overrule his third assignment of error.
In his sixth assignment of error, Jones maintains that his trial counsel's performance was ineffective because he did not request an instruction on self-defense or object to its omission. Assuming arguendo that trial counsel acted improperly, we are not persuaded that Jones's defense was prejudiced. As previously noted, it cannot be concluded that the outcome of the trial would have clearly been otherwise had counsel requested a jury instruction on self-defense or objected to the omission of such a charge. Accordingly, the sixth assignment of error is overruled.
Having found no merit in Jones's six assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 Gorman, P.J., Sundermann and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] See State v. Lane (1979), 60 Ohio St.2d 112, 119-121,397 N.E.2d 1338, 1343-1344.
[2] See Waller v. Georgia (1984), 467 U.S. 39, 45, 104 S.Ct. 2210,2215; State v. Unger (1986), 28 Ohio St.3d 418, 421-422,504 N.E.2d 37, 40; State v. Sanders (1998), 130 Ohio App.3d 92, 97-98,719 N.E.2d 619, 622-623, appeal denied (1999), 84 Ohio St.3d 1472,704 N.E.2d 579.
[3] See State v. Sanders, supra.
[4] See Waller v. Georgia, supra; State v. Unger, supra; State v.Sanders, supra.
[5] See State v. Hensley (1906) 75 Ohio St. 255, 262-263,79 N.E. 462, 462-463 ("The right of a person accused of a crime to a public trial is guarantied [sic] by the Constitution * * *. This does not impose upon the authorities a duty to provide so large a place for public trials as would accommodate every member of the community at the same time, for that would be plainly impracticable, but it does import a duty to make reasonable provision in that regard, and this requirement is usually met by ample accommodations for the purpose.").
[6] Evid.R. 609(A).
[7] See State v. Wright (1990), 48 Ohio St.3d 5, 548 N.E.2d 923, syllabus.
[8] See id.
[9] See Crim.R. 30(A); State v. Williford (1990), 49 Ohio St.3d 247,251-252, 551 N.E.2d 1279, 1283-1284.
[10] See State v. Cooperrider (1983), 4 Ohio St.3d 226, 227,448 N.E.2d 452, 453, State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332, syllabus; State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804.
[11] See State v. Cooperrider, supra, State v. Underwood, supra,
at 14, 444 N.E.2d at 1334, State v. Long, supra.
[12] See State v. Williford, supra, at 249, 551 N.E.2d at 1281, citing State v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus.
[13] See State v. Jackson (1986), 22 Ohio St.3d 281, 284,490 N.E.2d 893, 896-897.
[14] See State v. Schiebel (1990), 55 Ohio St.3d 71,564 N.E.2d 54, paragraph one of the syllabus.
[15] See State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144, 149.
[16] See State v. Carter (1995), 72 Ohio St.3d 545,651 N.E.2d 965, paragraph one of the syllabus.
[17] See id. at 553, 651 N.E.2d at 973-974.
[18] See Gordon v. Columbus Southern Elec. Co. (1960),112 Ohio App. 218, 219, 173 N.E.2d 720, 721.
[19] (1978), 53 Ohio St.2d 182, 373 N.E.2d 1244, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3138.
[20] See id. at 188, 373 N.E.2d at 1248.
[21] See id.
[22] See id.
[23] See State v. Mason (1998), 82 Ohio St.3d 144, 162,694 N.E.2d 932, 951, cert. denied (1998), 119 S.Ct. 624.
[24] See id. at 161, 694 N.E.2d at 951.
[25] See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus; State v. Bridgeman
(1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[26] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.
[27] See id.